JOURNAL ENTRY and OPINION
{¶ 1} When police officers responded to a shoplifting call at a convenience store, they found defendant Jason Wolf in the back room of the store, having been held and handcuffed by store security. When the officers removed the security guard's handcuffs in order to place their own handcuffs on Wolf, they saw a syringe laying on the floor. Nearby lay a spoon with heroin residue that the officers believed had been used to cook heroin into liquid form for purposes of injection. As the officers took Wolf into custody, he admitted to them that he had recently relapsed into drug use after a period of sobriety. A jury subsequently found Wolf guilty of one count of drug possession, in violation of R.C. 2925.11(A).
 1. I {¶ 2} Wolf argues that the court erred by denying his Crim.R. 29(A) motion for judgment of acquittal because the state failed to present sufficient evidence of drug possession. He argues that neither of the arresting officers testified that they saw him in control of the spoon; therefore, there was no evidence to prove possession.
 {¶ 3} When considering a court's refusal to grant a Crim.R. 29(A) motion for judgment of acquittal, we construe the evidence in a light most favorable to the state and determine whether the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. If so, the motion is properly denied. See State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus.
 {¶ 4} R.C. 2925.11(A) states that "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C.2925.01(K) states that "`[p]ossess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Nevertheless, possession of an item can exist without physical contact as long as a person has dominion and control over that item. This is considered "constructive" possession.State v. Bradley (1971), 26 Ohio App.2d 229, 232.
 {¶ 5} The court did not err by denying the motion for judgment of acquittal because reasonable minds could have differed on whether Wolf possessed the spoon with heroin residue. Although the state did not present any evidence of actual possession, the proximity of the spoon so close to Wolf and his subsequent admission to the police that he had recently relapsed into heroin use were facts that permitted reasonable minds to conclude that Wolf constructively possessed the spoon.
 1. II {¶ 6} Wolf argues that the verdict is against the manifest weight of the evidence for the sole reason that the jury "had no other alternative other than to convict" based on evidence of "prior inadmissible acts and alleged statements made * * * without Miranda warnings." We find that this argument fails to raise an issue under the appellate concept of the weight of the evidence (which challenges the quality of the evidence), but rather tries to bootstrap other alleged trial errors as a basis for reversal under this assignment. Since those claimed errors will be addressed separately, we summarily reject the argument that the verdict was against the manifest weight of the evidence.
 1. III {¶ 7} Wolf next argues that the court should have instructed the jury on the lesser included offense of possession of drug paraphernalia. The court did not err by denying the requested instruction because "drug paraphernalia containing drug residue is sufficient to sustain a conviction for drug possession. Had the paraphernalia not contained any residue, it is possible that such an instruction may have been appropriate. This is not the case here." See State v. Jordan, Cuyahoga App. Nos. 79469 and 79470, 2002-Ohio-590 (internal citation omitted).
 1. IV {¶ 8} During questioning by the police, Wolf made statements that he now claims were made without first being read his Miranda rights. While one of the officers testified that he did not read Wolf the Miranda rights, the other officer affirmatively stated that he did read Wolf the Miranda rights before any statements were made. In any event, Wolf did not file a pretrial motion to suppress any statements, so he is deemed to have waived any error. State v. Campbell (1994), 69 Ohio St.3d 38, 44.
 1. V {¶ 9} During trial, one of the arresting officers told the jury that he knew Wolf from the neighborhood: "I hadn't dealt with him in a while. I dealt with him on a couple of stolen car issues unrelated to him, that he was around. I asked him if he was using heroine [sic.] again because I knew him as a heroine [sic.] user from the neighborhood." The court overruled Wolf's objection to this statement. Wolf argues that this testimony constituted prejudicial other acts evidence under Evid.R. 404(B).
 {¶ 10} Evid.R. 404(B) prohibits the use of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that the person acted in conformity therewith. The evidence may be admissible for another purpose, however, such as to prove identity or knowledge. Id.
 {¶ 11} When the police first encountered Wolf, he told them that his name was "Jason Dye" and that he was a juvenile. While one of the officers could not immediately recall Wolf's name, he knew that Wolf had lied to them about his name and age. The officer supported this knowledge by citing to previous encounters with Wolf — hence the reference to having "dealt" with Wolf. This information went directly to explain how the officer knew Wolf.
 {¶ 12} We are troubled by the officer's reference to Wolf having been a heroin user. Wolf had been charged with possession of heroin, and the officer's statement about Wolf's prior heroin use could have permitted the jury to conclude that any past criminal behavior could have been relevant for purposes of proving guilt at trial. The court should have sustained Wolf's objection and given the jury a cautionary instruction.
 {¶ 13} Nevertheless, we cannot say that this error was so prejudicial as to warrant a new trial. Regardless of Wolf's past drug use, the evidence and Wolf's own statements to the police permitted no other conclusion but that he possessed the spoon with traces of heroin. We can confidently say that the error was harmless beyond a reasonable doubt.
 1. VI {¶ 14} In the midst of jury selection, Wolf objected to trial "going forward" because he had not received a lab report nor had he viewed the spoon. The state admits that it had a lab report on the substance found on the spoon and had received a request for discovery from Wolf, but did not give Wolf the number of a lab report until the first day of trial. Given this concession, we limit our review to the consequences of the state's failure to provide timely discovery.
 {¶ 15} Crim.R. 16(E)(3) states:
 {¶ 16} "Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 17} In Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, the syllabus states that when imposing sanctions for a violation of Crim.R. 16, the trial court "must impose the least severe sanction that is consistent with the purpose of the rules of discovery." The court went on to state the purpose of the rules of discovery is "to prevent surprise and the secreting of evidence favorable to one party." Id. at 3.
 {¶ 18} The state correctly points out that even though it did not hand over the lab report, it nonetheless listed it on its response to Wolf's discovery request as "evidence." While we in no way condone the state's discovery violation, the fact remains that Wolf knew about the existence of a "lab report" nearly three months before trial. Moreover, the lab report simply confirmed that the residue found on the spoon tested positive for heroin. Given that Wolf had been charged with possession of heroin, the test results could hardly have been a surprise to him.
 {¶ 19} Given these circumstances, we see no possibility that the court would have barred the lab report from evidence. Although the court should have found the state committed a discovery violation, the discovery violation was of no great moment to the defense as the report contained no information beyond that which defense counsel would have known as part of a preparation for the defense. Any discovery sanction the court might have considered beyond an upbraiding would have been unreasonable. Hence, the court would not have excluded the report. Any error in failing to find a discovery violation was harmless beyond a doubt.
 1. VII {¶ 20} In order to ascertain Wolf's true identify, the arresting officers called Wolf's mother using a telephone number that he had given them. The mother confirmed Wolf's true name to them. When the officers took Wolf to the police station, he went into a cell that had a telephone. One of the officers said that he overheard Wolf speaking to his mother, cursing her and saying, "I told you never tell the police anything when they call. Deny everything." Wolf claims that this was inadmissible hearsay.
 {¶ 21} Contrary to Wolf's argument, his statements to his mother were non-hearsay statements under Evid.R. 801(D)(2)(a) as an admission of a party-opponent. By reproaching his mother for confirming his identity, Wolf acted against his own interest since he demonstrated his mendacity to the police upon initial questioning in the back room of the convenience store.
 1. VIII {¶ 22} For his final argument, Wolf maintains that counsel performed ineffectively by failing to file a motion to suppress any statements that were made before he had been read his Miranda rights.
 {¶ 23} There is a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; that is, whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Strickland v. Washington (1984),466 U.S. 668. Ohio adopted this standard in the case of State v. Bradley
(1989), 42 Ohio St.3d 136.
 {¶ 24} Counsel does not perform ineffectively by failing to file futile motions. See State v. Martin (1983),20 Ohio App.3d 172, 174. While the police did not immediately read Wolf his Miranda rights, they did not have to do so since they were trying to ascertain his identity. When a police officer merely asks a defendant his or her name and other general questions associated with a police investigation, this type of questioning does not require a reading of Miranda rights. See State v. Loza,71 Ohio St.3d 61, 72, 1994-Ohio-409. {¶ 25} The statements relating to Wolf's relapse were made after Miranda rights had been read. It is true that one of the testifying officers could not recall whether Wolf had been read his rights, but the other officer testified that he read Wolf his Miranda rights before Wolf commented on his relapse.
Consequently, Wolf's statements would have been deemed to have been made voluntarily, with full knowledge of his right to remain silent. That being the case, counsel could not have prevailed on a motion to suppress these statements. Having failed to establish that counsel violated an essential duty, Wolf cannot set forth a claim of ineffective assistance of counsel.
 {¶ 26} Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., J., and Rocco, J., concur.