[Cite as *State v. Darmond*, 2011-Ohio-6160.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 96373 and 96374**

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## DEMETRIUS DARMOND

DEFENDANT-APPELLEE

**JUDGMENT:**
**AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-540709

**BEFORE:** Jones, J., Boyle, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** December 1, 2011

**ATTORNEYS FOR APPELLANT**

William D. Mason
Cuyahoga County Prosecutor

BY: Matthew Waters
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Patricia J. Smith
4403 St. Clair Avenue
The Brownhoist Building
Cleveland, Ohio 44103

Jeffrey P. Hastings
50 Public Square
Suite 3300
Cleveland, Ohio 44113

LARRY A. JONES, J.:

{¶ 1}   Plaintiff-appellant, the state of Ohio, appeals from the trial court's judgment dismissing the case with prejudice for a discovery violation.   We affirm.

I.   Procedural History and Facts

{¶ 2}   Defendants-appellees, Demetrius Darmond and Iris Oliver, were jointly

indicted in August 2010. Both defendants were charged with drug trafficking and drug possession, and Darmond was additionally charged with possessing criminal tools and endangering children.[1] The charges stemmed from the controlled delivery of a FedEx package containing marijuana to 16210 Huntmere, Cleveland, Ohio.

{¶ 3} The defendants waived their right to a jury trial and the case proceeded to a bench trial. The state presented the testimony of Special Agent Patricia Stipek. On March 13, 2010, Stipek was involved with a package interdiction at a FedEx facility. She retrieved three packages at that time, including the one destined for 16210 Huntmere; it was addressed to "Tasha Mack." The packages were all destined for different addresses. They all had similar packaging.

{¶ 4} Stipek obtained a search warrant for the package destined for Huntmere. Inside was a package wrapped in happy birthday paper and an envelope; marijuana was in the envelope.

{¶ 5} On March 17, 2010, Stipek did another package interdiction at the same FedEx facility and retrieved four packages, including the targeted one that was addressed to "Sonya Byrd" at 16210 Huntmere. Stipek testified that the four packages were similar to the packages she had retrieved on March 13.

{¶ 6} The special agent obtained a search warrant for the second package destined for Huntmere. The contents were similar to the first package destined for Huntmere — a

---

[1]Darmond had previously been under indictment in Case No. CR-535469 for the same charges. That case was dismissed without prejudice by the state on August 9, 2010, "for further investigation." The state re-indicted him in this case on August 11, 2010.

package wrapped in happy birthday paper and an envelope   with marijuana in it.

{¶ 7}   Stipek made a separate report for each of the seven packages, but with the exception of the two Huntmere packages, did not reference the other packages.   The record demonstrates that neither the state nor defense had knowledge of the other five packages.   Stipek did not have the additional reports with her at trial and was unable to testify about any investigation relative to those packages.   Because of this "surprise," the defense moved to dismiss the case.   The court held the request in abeyance, allowed for complete examination of Stipek, then reconsidered the defense request and granted it.

{¶ 8}   In dismissing the case, the trial court stated the excluded evidence "could be inculpatory or exculpatory."   The court rationalized its decision as follows:

{¶ 9}   "All seven of the boxes were very similar in nature and all were the same box size.   All seven of them were addressed and came from either the Phoenix or Tempe, Arizona area from a Kinko's store.

{¶ 10} "All of them were handwritten with the same handwriting.   Possibly the inside packaging on some of them were not exactly the same, but all of them came in a very similar packaging, birthday packaging, birthday cards, and so forth.

{¶ 11} "To then relate these seven boxes together, [ ] I believe all the other information should have been supplied, the reports, the addresses, the names, the investigation, whether there were charges, and quite possibly maybe if there was an indictment, which I don't know if there was or wasn't, and I don't think anyone can speak to that.

**{¶ 12}** "* * * [D]id someone own up to a scheme that maybe would have been information and evidence that could have been brought in here and testimony by another person to exonerate the two individuals that were charged in this case?"

**{¶ 13}** The state's sole assigned error reads: "The trial court abused its discretion in declaring a mistrial and by dismissing the state's case with prejudice due to an inadvertent discovery violation."

## II. Law and Analysis

**{¶ 14}** Crim.R. 16 governs discovery in criminal cases and states that the purpose of discovery is to "provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). If a party fails to comply with Crim.R. 16's discovery requirements, a trial court "may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing into evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L). It is within the trial court's sound discretion to decide what sanction to impose for a discovery violation. *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 3, 511 N.E.2d 1138. Therefore, a trial court's discovery sanction will not be overturned unless it was unreasonable, unconscionable, or arbitrary. *State v. Engle*, 166 Ohio App.3d 262, 2006-Ohio-1884, 850 N.E.2d 123, ¶7.

**{¶ 15}** Citing *Lakewood*, the state contends that the trial court abused its discretion

by not imposing a less severe sanction than dismissal with prejudice. This court addressed the "least restrictive sanction" element of *Lakewood* in *State v. Jones*, 183 Ohio App.3d 189, 2009-Ohio-2381, 916 N.E.2d 828, stating the following:

{¶ 16} "The holding in *Lakewood* must be read in conjunction with its facts. In *Lakewood*, the defense failed to respond to the prosecution's demand for discovery. At trial, the state objected when the defense called its first witness, arguing that the state had not been provided with a witness list. The trial court then excluded the testimony of all defense witnesses as a sanction for the failure to respond to the state's discovery request. The defense attorney proffered the testimony of the two witnesses he was precluded from calling.

{¶ 17} "The Ohio Supreme Court explained that the excluded testimony was material and relevant to the offense charged, and if believed, the defendant may have been acquitted. Consequently, the court concluded that the exclusions denied the defendant his Sixth Amendment right to present a defense. The court recognized that the state has a compelling interest but explained that any infringement on a defendant's constitutional rights caused by a sanction must be afforded great weight. The court held that 'a trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery.' The court also stated: 'We emphasize that the foregoing balancing test should not be construed to mean that the exclusion of testimony or evidence is never a permissible sanction in a

criminal case. It is only when exclusion acts to completely deny defendant his or her constitutional right to present a defense that the sanction is impermissible.'" *Jones* at ¶10-11, quoting *Lakewood* at paragraph two of the syllabus and at ¶5.

{¶ 18} In *Jones*, this court cited a Seventh Appellate District case, *State v. Crespo*, Mahoning App. No. 03 MA 11, 2004-Ohio-1576, wherein the court held that "[c]ommon sense dictates that the [holding in *Lakewood*] does not mean that a trial court must impose the 'least severe sanction' in every case. Otherwise, dismissal of an indictment could never be an appropriate sanction as there will always be a sanction less severe. Similarly, a jail term for contempt could be eliminated as an option because there are a plethora of less severe sanctions available." *Crespo* at ¶8; *Jones* at ¶12. The Seventh District further noted that a distinction exists in cases, unlike *Lakewood*, where the state fails to provide discovery, as opposed to cases where the defendant violated the discovery rules as in *Lakewood. Crespo* at ¶11 ("Therefore, the holding in *Lakewood* is not directly applicable in cases where sanctions are imposed upon the prosecution.")

{¶ 19} The state also contends that both it and the defense were surprised by the additional evidence, and absent a finding by the trial court that the additional evidence was exculpatory, and thus that the lack of knowledge was prejudicial to the defense, the court abused its discretion. The record is clear that both the prosecution and the defense were surprised by the additional evidence, but the fact that the state was surprised did not lessen the purposes of discovery, which in part, is to "protect the integrity of the justice system and the rights of defendants." Crim.R. 16(A). When potentially exculpatory

evidence is at issue, "the prosecutor may not hide behind the shield of innocence, claiming that the police failed to advise him of such evidence. Whether the non-disclosure is the responsibility of the officer or the prosecutor makes no difference. It is the government's failure that denies the accused the process due him." *State v. Sullivan* (Aug. 6, 1990), Tuscarawas App. No. 89AP120094, citing *United States ex rel. Smith v. Fairman* (1985), 769 F.2d 386.

{¶ 20} In regard to the nature of the evidence, that is, whether it was exculpatory or inculpatory, we are not able to make that determination. The trial court correctly stated that the evidence could have been exculpatory or inculpatory. Whatever its nature, it was discoverable, a point conceded by the state.

{¶ 21} We are not persuaded by the state's reliance on *State v. King*, Muskingum App. No. CT2010-0010, 2010-Ohio-5701. In *King*, the defendant was charged with theft. In its opening statement, the state made reference to text messages sent by the defendant to the victim without objection from the defense. During the defense's voir dire and opening statement, counsel several times stated that the defendant was going to take the stand and tell her side of the story. Defense counsel also stated that the defendant had a prior theft conviction.

{¶ 22} The state's first witness to testify was the victim. The victim testified about the incident and also stated that after the incident the defendant sent her text messages apologizing for the incident. The defense did not object while the victim was testifying, but at the conclusion of the state's direct examination of her, it alerted the court

that it had not received the text messages during discovery and requested a mistrial. The state acknowledged that it had committed "an oversight in the discovery process." Id. at ¶31. The trial court granted the defense's motion and dismissed the case with prejudice, stating that the "act of the State hints toward intentional overreaching to gain an unfair tactical advantage." Id. at ¶11.

{¶ 23} The Fifth Appellate District found that the trial court abused its discretion. Specifically, the court found there was no evidence that the state's mistake was an intentional oversight. The court also noted that the defense did not timely object. This case differs from *King*.

{¶ 24} In *King*, the evidence was inculpatory, while here it was not certain whether the evidence was inculpatory or exculpatory. Moreover, further investigation into the matter was likely not needed in *King*, whereas further investigation would have been needed in this case. Additionally, the court here did not find that the state's act was intentional despite a lack of evidence on that. Rather, the court here found that the evidence was relevant evidence to which the defense was entitled for further investigation, irrespective of how it came to be overlooked.

{¶ 25} The record here evidences that the trial court gave careful and deliberate consideration to the defense's request for a mistrial. "[T]he trial court is in far the better position to monitor the criminal process. When he elects to exercise discretion we are well advised to recognize and honor it in the absence of error of law." *Sullivan*, supra, citing *State v. Everhart* (July 23, 1990), Tuscarawas App. No. 89-AP-40036.

{¶ 26} On the record before us, we cannot find that the trial court abused its discretion, especially in light of the fact that the state had already indicted and dismissed charges against Darmond for "further investigation," and then two days later re-indicted him and Oliver, his mother-in-law. The state's sole assignment of error is therefore overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES,   JUDGE

MARY J. BOYLE, P.J., and
JAMES J. SWEENEY, J., CONCUR