[Cite as *State v. Keenan*, 2013-Ohio-4029.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99025**

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## THOMAS M. KEENAN

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-232189

**BEFORE:** Jones, P.J., S. Gallagher, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** September 19, 2013

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Richard A. Bell
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH   44113


**ATTORNEY FOR APPELLEE**

Timothy F. Sweeney
Law Office-Timothy Farrell Sweeney
The 820 Building, Suite 430
820 W. Superior Avenue
Cleveland, OH   44113

LARRY A. JONES, SR., P.J.:

**{¶1}** Plaintiff-appellant, the state of Ohio, appeals from the trial court's dismissal with prejudice of the indictment against defendant-appellee, Thomas Michael Keenan. We affirm.

## I.   Brief Overview of Pertinent Procedural History

**{¶2}** This case dates back to the September 1988 discovery of Anthony Klann's body in Doan Creek.[1]  Keenan was indicted, along with alleged co-conspirators Joe D'Ambrosio and Edward Espinoza, in connection with Klann's death.  Keenan was charged with two counts of aggravated murder, one count of kidnapping, and one count of aggravated burglary.  In 1989, a jury returned a guilty verdict on all counts, recommended Keenan be sentenced to death, and the trial court sentenced him to death.  In a subsequent appeal to the Ohio Supreme Court, the court determined that prosecutorial misconduct occurred during closing argument, and it vacated the convictions and ordered a new trial. *State v. Keenan*, 66 Ohio St.3d 402, 613 N.E.2d 203 (1993).

**{¶3}** In 1994, a second trial commenced on the same charges; Keenan was again convicted and sentenced to death.  This court and the Ohio Supreme Court affirmed the convictions and sentence.  *State v. Keenan*, 8th Dist. Cuyahoga No. 67452, 1996 Ohio App. LEXIS 3569 (Aug. 22, 1996), *aff'd*, 81 Ohio St.3d 133, 689 N.E.2d 929 (1998).

---

[1]A complete factual history, as adduced by the evidence presented at Keenan's second trial, can be found in *Keenan v. Bagley*, N.D.Ohio No. 1:01 CV 2139, 2012 U.S. Dist. LEXIS 57044 (Apr. 24, 2012), and *State v. Keenan*, 81 Ohio St.3d 133, 689 N.E.2d 929 (1998).

{¶4} After exhausting his state remedies,[2] Keenan filed a petition for a writ of habeas corpus in the United States District Court, Northern District of Ohio. In the district court, Keenan filed numerous motions to expand the record, primarily to include documents from D'Ambrosio's federal habeas and state court retrial proceedings. The district court allowed the inclusion of these documents in Keenan's habeas proceeding. *Keenan v. Bagley*, at *32-22.

{¶5} The district court subsequently found that the state suppressed evidence in violation of its duties under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by withholding seven specific categories of evidence. *Keenan v. Bagley* at *134. The district court described the *Brady* violations in Keenan's case as "serious and disturbing violations of the State's constitutional obligation to produce to defendants any and all exculpatory information in their possession." *Id.* The district court referenced the state's "stonewalling" for nearly 20 years, *id.*, and noted that Keenan only learned of the evidence as a result of discovery ordered by the federal court in D'Ambrosio's habeas case. *Id.* at *68 and 83.

{¶6} The district court concluded that there was a reasonable probability that the suppressed evidence would have produced a different verdict sufficient to undermine confidence in the outcome of the trial. *Id.* at *128-129. The court issued a conditional writ of habeas corpus, dated April 24, 2012, ordering the state to either set aside Keenan's

---

[2]Additional procedural history is outlined in *Keenan v. Bagley*, N.D. Ohio No. 1:01 CV 2139, 2012 U.S. Dist. LEXIS 57044 (Apr. 24, 2012).

conviction for aggravated murder and his death sentence, or conduct another trial within 180 days from the date of the order.

{¶7} The state elected to retry Keenan for Klann's murder and filed a motion for a new trial on May 31, 2012. The trial court granted the motion on July 9, 2012, and vacated Keenan's convictions.

{¶8} On July 11, 2012, the state filed notices of intent to (1) introduce Keenan's prior testimony under Evid.R. 801(D)(2)(a), (2) introduce prior testimony of deceased witness Edward Espinoza pursuant to Evid.R. 804(D)(1), and (3) introduce prior testimony and statements of D'Ambrosio pursuant to Evid.R. 801(D)(2)(e). Keenan filed motions in opposition to the state's notices of intent. The trial court conducted a hearing on August 23, 2012, and subsequently ordered that the state could not use any of the prior testimonies or statements. On August 29, 2012, the state elected to remove the death penalty specifications from the indictment.

{¶9} Meanwhile, on August 8, 2012, Keenan filed a motion to dismiss the indictment. After the state opposed, the trial court conducted a hearing on August 27, 2012, but held its ruling on the motion in abeyance.

{¶10} A hearing was set to commence on September 5, 2012, relating to Keenan's motion to dismiss, but the court once again held its ruling in abeyance because the parties were involved in plea discussions. After a partial plea colloquy, however, Keenan decided not to plead guilty.

{¶11} On September 6, 2012, the trial court issued the following order, granting

Keenan's motion to dismiss with prejudice:

> Pursuant to Criminal Rule 48(B), a hearing on defendant Thomas Michael Keenan's motion to dismiss the indictment with prejudice was held in open court on 9/5/12. The court issued [its] findings of fact & conclusions of law on the record. The court finds in the interest of justice and fairness, the harm done to the defendant Keenan has been so egregious that this is the extraordinary case where the court has no other option but to grant the motion to dismiss. Defendant's motion to dismiss the indictment against him with prejudice is granted. *See* Crim.R. 48(B); Criminal Rule 16(L)(1); *State v. Larkins*, 8th Dist. No. 85877, 2006-Ohio-90.

> Defendant Keenan's request for appellate bond is granted over state's objection. Defendant Keenan's bond is set [at] $5,000 personal bond with court supervised release supervision. Defendant is to report to CSR bi-weekly while this case is pending in the Court of Appeals. Defendant ordered released.

**{¶12}** The state appealed from this ruling and submits one assignment of error:

[I.] The trial court erred when it granted the Defendant-Appellee's Motion to Dismiss the Indictment with Prejudice.

## II. Law and Analysis

New Trial

**{¶13}** The state claims that the district court already sanctioned the state when it issued the April 24, 2012 conditional writ of habeas corpus ordering the state to either set aside Keenan's conviction for aggravated murder and his death sentence, or conduct another trial within 180 days from the date of the order. The state argues that the trial court did not follow the district court's mandate when it sanctioned the state a second time for the same discovery violation by dismissing Keenan's indictment with prejudice as this

action was neither setting aside the conviction and sentence nor conducting a new trial. We find no merit to this argument.

{¶14} The district court remanded the case to the trial court for further action, and the state elected to retry Keenan. The decision to go forward with a new trial did not divest the trial court of its continuing powers of jurisdiction over any further actions of the parties. *See Larkins*, 8th Dist. Cuyahoga No. 85877, 2006-Ohio-90, ¶ 58 (Kilbane, J., concurring). The trial court was not sanctioning the state a second time for the same actions or refusing to follow the district court's mandate.

{¶15} As this court noted in *Larkins* at ¶ 32, "Civ.R. 33(D) and R.C. 2945.82 govern the manner in which a new trial is to be conducted." Civ.R. 33(D) provides that "[w]hen a new trial is awarded on appeal, the accused shall stand trial upon the charge or charges of which he was convicted." And R.C. 2945.82 provides that "when a new trial is granted by the trial court * * * the accused shall stand for trial upon the indictment or information as though there had been no previous trial thereof."

{¶16} Consequently, once the district court remanded the case and the state elected to proceed with a new trial, "matters stood in the same position they did before any trial had been conducted. It follows that the court possessed all authority to reopen discovery or entertain any pretrial motions available at law." *Larkins* at ¶ 33, 55 (Kilbane, J., concurring). Therefore, Keenan was within his rights to file a motion to dismiss and the trial court could consider said motion.

<u>State v. Darmond</u>

**{¶17}** We review the trial court's decision to grant Keenan's motion to dismiss with prejudice for an abuse of discretion. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 33, citing *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983).

**{¶18}** The state submits the trial court failed to consider a less severe sanction than dismissal with prejudice.

**{¶19}** In *State v. Darmond*, 8th Dist. Cuyahoga Nos. 96373 and 96374, 2011-Ohio-6160, this court held that the "least severe sanction" language from *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), does not apply to cases where sanctions are imposed on the prosecution. In *Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, the Ohio Supreme Court disagreed and concluded that its previous holding in *Lakewood* that

> '[a] trial court must inquire into the circumstances surrounding a discovery
> rule violation and, when deciding whether to impose a sanction, must impose
> the least severe sanction that is consistent with the purpose of the rules of
> discovery' applies equally to discovery violations committed by the state and
> to discovery violations committed by a criminal defendant.

*Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, at the syllabus, quoting *Lakewood*, paragraph two of the syllabus.

**{¶20}** In *Lakewood*, the court had viewed the trial court's sanction of excluding the testimony of the defense witnesses as too severe because it effectively deprived the defendant of the ability to present a defense. *Id.* at 4-5. The court concluded that the trial court should not have imposed the sanction without first considering and rejecting the

feasibility of less severe sanctions.  *Id.* at 5.

**{¶21}** In expanding its *Lakewood* holding, the *Darmond* court noted that the stated purpose of the 2010 amendment to Crim.R. 16(A) was to provide for a just determination of criminal proceedings and to secure the fair, impartial, and speedy administration of justice; the amended rule "expands the reciprocal duties in the exchange of materials," and "balances a defendant's constitutional rights with the community's compelling interest in a thorough, effective, and just prosecution of criminal acts."  *Darmond* at ¶ 29; Staff Notes to the 2010 amendment to Division (A) of Crim.R. 16.  The *Darmond* court further recognized that the current Crim.R. 16(A) applies to "all parties in a criminal case," and "all duties and *remedies*" of the rule are reciprocal and apply "to the defense and the prosecution equally."  (Emphasis sic.)  *Id.*; Crim.R. 16(A).

**{¶22}** In comparing *Lakewood* to *Darmond*, the Ohio Supreme Court recognized the sanction of dismissal with prejudice in *Darmond* was also "extremely severe" because it foreclosed the possibility of further prosecution.  *Darmond* at ¶ 30.  The court noted that

> Crim.R. 16's emphasis on equal and reciprocal treatment of parties clarifies that the strong preference expressed in *Lakewood* for imposing the least severe sanction that will further the purposes of the discovery rules is a critical consideration that must be taken into account in any criminal case before a severe sanction is imposed for a discovery violation.

*Darmond* at 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 31.  A trial court should not impose the sanction of dismissal with prejudice unless the trial court specifically weighs and rejects the feasibility of less severe sanctions.  *Id.* at ¶ 30.

**{¶23}** That being said, the *Darmond* court noted that, despite this mandate, the trial court retains the discretion in determining a sanction for a discovery violation.[3] *Id*. at ¶ 33, citing *Parson*, 6 Ohio St.3d at 445, 453 N.E.2d 689. The 2010 amendments to Crim.R. 16 did not change this long-standing principle. *Darmond* at *id.* The court stated:

> Crim.R. 16(L)(1) is identical to former Crim.R. 16(E)(3) in detailing a trial court's authority to issue orders in the wake of a party's failure to comply with discovery obligations, and in particular provides that the trial court may issue any order "it deems just under the circumstances."

*Id*., citing *Parson* at *id.*; *see also* Staff Notes to 2010 amendment to Division (L) of Crim.R. 16 ("The trial court continues to retain discretion to ensure that the provisions of the rule are followed. This discretion protects the integrity of the criminal justice process while protecting the rights of the defendants, witnesses, victims, and society at large.")

Three-Prong Test

**{¶24}** In *Parson*, the Ohio Supreme Court established a three-prong test governing a trial court's exercise of discretion in imposing a sanction for the prosecution's discovery violation: (1) whether the failure to disclose was a willful violation of Crim.R. 16; (2) whether foreknowledge of the undisclosed material would have benefitted the accused in the preparation of a defense; and (3) whether the accused was prejudiced. *Id*. at syllabus; *see also State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864.

**{¶25}** In *Darmond*, the Ohio Supreme Court noted that several of the factors

---

[3]We, therefore, reject the state's proposition that a trial court's legal conclusions in a pretrial motion to dismiss are subject to a de novo review on appeal.

discussed in *Lakewood* are similar to the *Parson* factors. *Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 36. These factors include the degree of prejudice to the opposing party and whether the violation was willful or in bad faith. *Id*.; *see Lakewood*, 32 Ohio St.3d at 5, 511 N.E.2d 1138. The court emphasized that its holding did not mean that

> a discovery violation committed by the state can never result in the dismissal with prejudice of a criminal case. That option remains available when a trial court, after considering the factors set forth in *Parson* and in *Lakewood*, determines that a lesser sanction would not be consistent with the purposes of the criminal discovery rules.

*Darmond* at ¶ 41.

{¶26} In the present case, the trial court conducted the three-prong analysis set forth in *State v. Wiles*, 59 Ohio St.3d 71, 78-79, 571 N.E.2d 97 (1991), which is the same as the *Parson* analysis.

{¶27} In rendering its decision, the trial court stated its findings of fact and conclusions of law on the record. In pertinent part, the trial court found:

> The first prong is the violation and was the violation willful; the second prong is foreknowledge, would foreknowledge have benefitted Mr. Keenan or the Defendant; and the third prong is has the Defendant suffered prejudice as a result of the State's failure to disclose the information.

> Applying that test to this case, I'm going to make the following specific findings of fact as they pertain to this case:

> As to the first prong, it is without question, based on the egregious history of the prosecutorial misconduct and the *Brady* violations outlined in detail by both the Ohio Supreme Court and the Northern District of Ohio in this case that the State willfully withheld exculpatory evidence from Keenan and his attorneys.

Looking at the second prong, the knowledge of this material prior to trial would have clearly benefitted Mr. Keenan's case.

It would have allowed for more effective cross-examination of witnesses, especially Edward Espinoza, the co-defendant, and the alleged sole eyewitness to this crime.

The evidence that Paul Lewis had been indicted for the rape of [a male victim]; that Anthony Klann, the decedent, had some knowledge of this rape, and that Paul Lewis had never been prosecuted for it[,] would have also been beneficial for Keenan. This evidence could have strengthened Keenan's case by establishing a motive of someone other than Keenan for the murder of Anthony Klann.

For the same reasons, the evidence that Paul Lewis was the anonymous caller who called police and identified Anthony Klann as the murder victim, and had information regarding the murder that was not publicly known could also have benefitted Mr. Keenan's case.

The evidence that the initial responding detectives believed the murder to have occurred somewhere other than Doan's Creek would have allowed a more effective questioning of the police investigation, impeachment of Espinoza, and could have cast doubt on the State's theory of the case.

The cassette tape that was made by Angelo Crimi that may have implicated others in the murder would have been obviously beneficial to the Keenan case. The disclosure of the existence of this tape and its subsequent disappearance could have held significant impeachment value towards the impeachment of the police and Edward Espinoza.

James "Lightfoot" Russell's relocation request could have been used by Keenan's defense counsel to question the State of Ohio regarding his unavailable status in the second trial.

The statements made by the neighbors, Theresa Farinacci, and the older couple who was not identified, would have strengthened the initial detective's conclusion that the murder occurred somewhere else or somewhere other than Doan's Creek.

It could have also been used to question the thoroughness of the police investigation, and Paul Lewis' involvement in the crime since the statements were overheard by neighbors near Mr. Lewis' apartment.

It is clear to this court that the exculpatory evidence would have strengthened and been beneficial to Keenan's case as outlined in prong two [of *Wiles*, 59 Ohio St.3d at 78-79, 571 N.E.2d 97].[4]

Looking at the third prong and final prong, has Keenan suffered severe prejudice as a result of the State's failure to disclose the exculpatory evidence.

Keenan's case is now 24 years removed from the crime. The witnesses would have to testify to detailed issues that took place that long ago, including the date and time of this alleged murder which have never been decisively established.

The only alleged eyewitness, Edward Espinoza, is deceased. And his testimony is not admissible because he was never able to be cross-examined with the newly discovered exculpatory material. Additionally, Keenan was never able to use the exculpatory evidence to impeach Espinoza.

Other witnesses of importance are also deceased, including Detective Timothy Horval, Lee Oliver, Angelo Crimi, and James Russell. None of whom have been able to be cross-examined or confronted with the exculpatory evidence.

The Keenan case before the court today clearly satisfies the three-prong test as outlined by the Ohio Supreme Court case of *State v. Wiles*. As in *Larkins*, this case is the unique and extraordinary case, that the harm done to Mr. Keenan cannot be resolved by a new trial, and this Court is going to dismiss this case with prejudice.

---

[4]The district court also found this material had significant exculpatory and impeachment value:

> The State had a clear obligation to reveal the information it possessed concerning Lewis' rape charge, request for assistance from the police and role in the early investigation; the initial police theories of where the murder occurred; the statement of a former roommate of the victim regarding who was involved in the murder; and the statements of wholly disinterested witnesses to activities near Lewis' apartment on Friday night/Saturday morning.

*Keenan*, N.D. Ohio No. 1:01 CV 2139, 2012 U.S. Dist. LEXIS 57044, *134.

＊ ＊ ＊

Therefore, while the Court is aware that it has an obligation to impose the least severe sanction that is consistent with the purposes of the rules of discovery, I find that Keenan's case is the unique and extraordinary case where the prejudice created cannot be cured by a new trial.

**{¶28}** Again, our review is limited to whether the trial court abused its discretion in granting Keenan's motion to dismiss. A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). An abuse of discretion includes a situation in which a trial court did not engage in a "'sound reasoning process.'" *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An abuse-of-discretion review is deferential, and an appellate court may not simply substitute its judgment for that of the trial court. *Id.*

**{¶29}** In granting the motion to dismiss, the trial court relied, in part, on *Larkins*, 8th Dist. Cuyahoga No. 85877, 2006-Ohio-90, a case in which a defendant's indictment was dismissed as a sanction against the state for its violation of Crim.R. 16. The trial court in *Larkins* found that the state had willfully withheld exculpatory material from the defendant, including information that called into question the state's identification of the defendant as the perpetrator. *Id.* at ¶ 43-48. This court affirmed and concluded that the prejudice to Larkins could not be cured by a new trial because nearly 20 years had passed since the original trial, eight witnesses for the defense were deceased, numerous witnesses

had unknown addresses, and to present the witnesses' prior testimony "would be useless because none of the witnesses had been previously questioned about the exculpatory evidence withheld in the case." *Id*. at ¶ 51.

**{¶30}** In this case, the state contends that, unlike Larkins, Keenan is unable to prove the third *Wiles* or *Parson* prong, a prima facie showing of prejudice. The state argues that Keenan is unable to show that the discovery violations prejudiced him due to (1) the unavailability of critical witnesses and the passage of time, (2) the degradation of memory, or (3) an inability to meaningfully use the newly discovered *Brady* material. The state also asserts that "Keenan should not be permitted to argue for the exclusion of Espinoza's testimony, and then once its excluded, also be able to argue that he is prejudiced because he cannot confront the testimony with the newly discovered *Brady* material." According to the state, "by moving to exclude Espinoza's testimony, the defendant has invited the 'error' of not being able to effectively use the newly discovered *Brady* material."

**{¶31}** We reject the state's position. Espinoza was the state's only eyewitness to Klann's murder. Based solely on the state's knowingly withholding the exculpatory material, Keenan is forever barred from *effectively* using the material to cross-examine or impeach Espinoza because Espinoza is dead. Keenan is prejudiced because he cannot confront a living Espinoza with the exculpatory material because he did not have it when Espinoza testified at his first and second trials.[5] As recognized by the district court,

---

[5] *See Keenan*, N.D.Ohio No. 1:01 CV 2139, 2012 U.S. Dist. LEXIS 57044, *123-129, for a

"Keenan could have used the evidence to impeach Espinoza, and, because Espinoza was the State's sole witness to the crime and the only evidence linking Keenan to the murder, thereby undercut the State's entire case." *Keenan*, N.D.Ohio No. 1:01 CV 2139, 2012 U.S. Dist. LEXIS 57044, *123.

New Argument on Appeal

{¶32} For the first time on appeal, the state proposes that while any form of dismissal was improper, the trial court should have imposed a less severe sanction of dismissal of the murder count (due to the unavailability of Espinoza), but preserved the burglary and kidnapping counts, for which both parties had sufficient witnesses available to independently proceed with trial on those charges.

{¶33} During oral argument, the state vehemently reiterated its position that the trial court should have allowed the trial to proceed on the kidnapping and burglary counts as a less severe sanction, rather than dismissing the entire indictment with prejudice. The state contends that it was prepared to proceed to trial on all counts, or only on the kidnapping and burglary counts, and could do so without a prejudicial impact on Keenan.

{¶34} We reject the state's contention that the trial court abused its discretion when it "failed" to allow the state to proceed on the charges of kidnapping and burglary. Not only does the state raise this argument for the first time on appeal, but, in fact, the state urged the trial court to allow it to proceed on all charges even after the court disallowed use of Espinoza's prior testimony. *See* tr. 417-418. At no time during the state's

discussion of the significant exculpatory and impeachment value of the withheld evidence.

argument to the trial court, *nor in its post-argument briefing*, did the state propose the less severe sanction of dismissing only some of the charges. The state repeatedly told the court that it was prepared to go forward on the aggravated murder charges, even without the use of the prior testimony the court excluded from Keenan, D'Ambrosio, and Espinoza.

{¶35} We are well aware that the trial court had the discretion to fashion its own sanction and could have granted the motion to dismiss as to one, some, or all of the charges. But we find the state's newly-fashioned argument on appeal that the trial court failed to consider the less severe sanction of dismissal of only the aggravated murder charges somewhat disingenuous given that it is the first time the state has raised the issue. In addition, the trial court expressly stated it was aware of its obligation to impose the least severe sanction that is consistent with the purposes of the rules of discovery before it dismissed the indictment.

{¶36} The aggravated murder, kidnapping, and aggravated burglary crimes with which Keenan were charged were part of one continuous course of conduct over several hours and, despite the state's arguments to the contrary, dependent upon Espinoza's allegations. The state fails to accept responsibility for its intentional inactions, and thus fails to recognize these inactions over the span of more than two decades resulted directly in the trial court's dismissal of the entire indictment. Were it not for D'Ambrosio's habeas hearing and the discovery of this "new" evidence, Keenan would most likely still

be without it.[6]   We agree that the prejudice caused by the state's refusal to divulge exculpatory evidence has now made it impossible to restore Keenan to the position that he should have been in at the time of the first and second trials had he been made aware of the exculpatory evidence.

{¶37} *Larkins,* 8th Dist. Cuyahoga No. 85877, 2006-Ohio-90, was the extraordinary case in which prejudice caused to the defendant as a result of the state's failure to disclose exculpatory evidence could not be cured except by a dismissal with prejudice.   This is also such an extraordinary case.   The trial court was in the best position to determine which sanction under Crim.R. 16(L) was most appropriate.   The trial court considered, but rejected, a less severe sanction, as mandated by *Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971.

{¶38} Based on the record in this case, we cannot state that the trial court's decision to grant Keenan's motion to dismiss the indictment with prejudice was so arbitrary, unreasonable, or unconscionable as to be an abuse of the trial court's discretion.

{¶39} There will be no sense of legal or human relief or resolution resulting from our collective work on this now quarter century-long pursuit of truth.

---

[6] *See Keenan*, N.D.Ohio No. 1:01 CV 2139, 2012 U.S. Dist. LEXIS 57044, *68 and 83 ("An examination of the development of Keenan's *Brady* claims during this long and complex case, and the symbiotic relationship between his case and that of his co-defendant, demonstrates that despite Keenan's and D'Ambrosio's persistent discovery efforts, the State continued to withhold much of the evidence now at issue until its hand was forced in the [2002] D'Ambrosio case. * * *   Throughout the twenty-three years of his case, Keenan persistently has sought discovery from the State, and was thwarted at every stage. He only obtained most of the information as a result of his co-defendant's highly contentious and hard-won habeas discovery.").

**{¶40}** In 1988, a cowardly and unspeakable vicious homicide was carried out upon the victim, Anthony Klann. All surviving family, friends, and this community are frustrated by the failure to effectuate justice resulting from his violent death.

**{¶41}** The 2012 trial court is not at fault for dismissing the retrial of this murder. The degradation of this case began 25 years ago, when the desire to obtain a conviction overwhelmed the state's responsibility to seek the fullest truth of that day in September 1988.

**{¶42}** A defendant's right to a fair trial dates back to the adoption of our nation's most revered founding documents. In this case, the federal court determined that a fair trial had not taken place; and in 2012, the trial court decided it could not in the future. While the victim deserved justice, the bad-faith conduct from 1988 forward made that impossible.

**{¶43}** The state's sole assignment of error is overruled.

**{¶44}** Judgment affirmed.

It is ordered that appellee recover from appellant his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

LARRY A. JONES, SR., PRESIDING JUDGE

TIM McCORMACK, J., CONCURS
SEAN C. GALLAGHER, J., DISSENTS WITH
SEPARATE OPINION

SEAN C. GALLAGHER, J., DISSENTING:

{¶45} I respectfully dissent from the opinion of the majority. In my opinion, the trial court abused its discretion by imposing the most severe discovery sanction, dismissal of the indictment, after it already imposed a less severe one, precluding evidence, all for the same *Brady* violations that formed the basis of awarding a new trial as the original sanction. I further believe that the majority combines two different standards used to review a due process claim based on prior *Brady* violations, with ongoing discovery violations, to create one unworkable standard that offers no prospective guidance to the trial courts. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Understandably, this conflation of issues began with this district's *Larkins* decision; however, in light of the Ohio Supreme Court's decision in *Darmond*, *Larkins* must be limited by the facts of that case. I would, accordingly, reverse the decision of the trial court and remand for further proceedings. *State v. Larkins*, 8th Dist. Cuyahoga No. 85877, 2006-Ohio-90; *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971.

{¶46} In its assignment of error, the state argues the trial court erred by relying on *Larkins* and granting the motion to dismiss with prejudice as a discovery sanction, when either no sanction or a lesser sanction was appropriate. This case originated from the

federal district court's judgment determining that the state committed a *Brady* violation by withholding evidence, and sanctioning the state for the violation by ordering either a new trial or dismissal of the indictment, at the state's election. The state elected a new trial upon remand to the trial court. Keenan, after pursuing cursory discovery, filed a motion to dismiss the indictment based on the *Brady* violation, claiming the new trial would not remedy the violation. Both the trial court and the majority analyzed Keenan's claim as a discovery violation sanctionable pursuant to Crim.R. 16, rather than as a due process violation based on the original *Brady* violation, when the discovery for the new trial revealed that a retrial would violate the defendant's constitutional due process rights in light of the degraded state of discovery caused by the passage of time.

{¶47} If the dismissal of the indictment was predicated upon a Crim.R. 16 discovery violation and analysis, once the trial court determined that a discovery sanction was warranted based on its tripartite *Parson* analysis, the court should have determined whether a less severe sanction would suffice to remedy the prejudice caused by the discovery violation. *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983). The trial court conducted the three-prong analysis as set forth in *State v. Wiles*, 59 Ohio St.3d 71, 78-79, 571 N.E.2d 97 (1991) (reiterating the tripartite *Parson* analysis), to determine that a further discovery sanction was warranted, given the ongoing prejudice to Keenan caused by the *Brady* violations. The state's appeal focuses on the trial court's conclusion that Keenan was prejudiced by the discovery violations in its analysis of the third *Wiles* prong, and whether a less severe sanction would have been consistent with the

purposes of the criminal discovery rules.

{¶48} In *Larkins*, 8th Dist. Cuyahoga No. 85877, 2006-Ohio-90, upon which the majority heavily relies, this court affirmed the trial court's dismissal of the defendant's indictment as a sanction for the state's violation of Crim.R. 16. In that case, the state had willfully withheld exculpatory material from the defendant, including information that called into question the state's identification of the defendant as the perpetrator, resulting in prejudice to the defendant. *Id*. at ¶ 43-48. The prejudice to Larkins could not be cured by a new trial because eight witnesses for the defense were deceased and 16 other witnesses had unknown addresses, and to present those witnesses' prior testimony would have been useless because none of the witnesses had been previously questioned about the exculpatory evidence. *Id*. at ¶ 51.

{¶49} The *Larkins* court essentially shoe-horned a due process argument — that the new trial awarded as a sanction for the *Brady* violation would violate a defendant's right to due process in light of the passage of time and degradation of witnesses' memories — into the framework for analyzing sanctions used to remedy ongoing pretrial discovery violations pursuant to Crim.R. 16. It is for this reason that *Larkins* must be limited to its facts. In both *Lakewood v. Papadelis* and *Darmond*, the Ohio Supreme Court interposed an additional factor to resolving discovery disputes that this court's *Larkins* analysis omitted. *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 4-5, 511 N.E.2d 1138 (1987); *Darmond*, 135 Ohio St.3d 343, 352, 2013-Ohio-966, 986 N.E.2d 971.

{¶50} *Lakewood* and *Darmond* instruct the court to analyze the effectiveness of a

less severe sanction, such as preclusion of evidence, prior to imposing the most severe sanction available pursuant to Crim.R. 16, which is dismissal of the indictment. *Lakewood*; *Darmond* (acknowledging that although it would have been "helpful" for the state to provide alternative sanctions in its opposition to a motion to dismiss the indictment, it was an unnecessary prerequisite). The obligation rests with the trial court to ensure that the least severe sanctions available are considered. *Id.* The majority creates a standard shifting the burden to the state to provide the court with less severe sanction options. Under that standard, the state's failure to do so would forfeit its right to argue that the court failed to consider the effectiveness of the less severe sanction. *Lakewood* and its progeny set no such standard.

{¶51} While the trial court addressed the *Parson* factors in this case, it failed to specifically consider the effectiveness of a less severe discovery sanction, concluding its sole obligation was to merely consider the sanction of a new trial, derived from the original *Brady* violation, as opposed to considering the effectiveness of a less severe sanction, such as preclusion of evidence. It is important to note the completely unworkable standard the majority perpetuates. The vehicle Keenan used to seek further sanctions for the *Brady* violations was a motion to dismiss the indictment *after* the retrial was already granted as a sanction for the *Brady* violation. Thus, the retrial was not a sanction available to impose any further discovery sanctions against the state; it was already granted. If, as the majority implies, the standard of review is derived from Crim.R. 16, the court necessarily abused its discretion when it failed to consider the

effectiveness of any other discovery sanction to address the prejudice emanating from the deteriorated state of discovery. *Darmond* at 352. The trial court's only consideration was of the sanction imposing a retrial, a sanction not available at that stage of the proceedings for the purposes of a Crim.R. 16-derived sanction.

{¶52} Moreover, the trial court imposed an additional sanction against the state for the *Brady* violation by precluding its use of Espinoza's prior testimony at the new trial. The court then, without addressing the effectiveness of that sanction, bootstrapped the preclusion of testimony with Keenan's argument that he was prejudiced by the exclusion because he could not use the newly discovered exculpatory evidence, which was the basis for the *Brady* violation, to impeach the only eyewitness to the crime. Such a circular argument leaves the state in an untenable position.

{¶53} Under the majority's rationale, trial courts are now free to consider Crim.R. 16 sanctions that are unavailable, or to consider imposing the most severe sanctions based on the prejudice caused by the imposition of the less severe sanction in resolving criminal discovery disputes. I cannot join such a broad advancement of *Darmond* or *Larkins*. The majority rationalizes the broad interpretation by perpetuating an unsupported standard, from *Larkins*, that a trial court does not abuse its discretion in dismissing an indictment based on *Brady* violations for which a new trial was already granted if it is impossible to restore the defendant to the position he should have been in at the time of the first trial. This essentially creates a bright-line rule that the state will be precluded from retrying defendants after a *Brady* violation is found years after the original trial: it will always be

impossible to restore the defendant to his original position through the ravages of time. Most courts have established that the typical remedy for a *Brady* violation is the granting of a new trial, and speak nothing of a requirement that the defendant be restored to his original position. *State v. Mapp*, 3d Dist. Union No. 14-10-34, 2011-Ohio-4468, _ 32; *United States v. Presser*, 844 F.2d 1275, 1286 (6th Cir.1988).

{¶54} Keenan's argument and the trial court's ruling are both grounded on a Crim.R. 16 discovery violation. The reality is, however, Keenan's motion to dismiss the indictment raises a due process claim in that a new trial would violate Keenan's constitutional right to due process because of the passage of time and the unavailability of witnesses after discovery was conducted for the new trial, which was awarded as a sanction for the *Brady* violation. This analysis stands apart from a claim for ongoing discovery violations pursuant to Crim.R. 16. Keenan, however, failed to substantiate the merits of a due process argument based on the record before this court. Tellingly, the majority avoids any discussion on the due process arguments Keenan raised, while implicitly relying on such in affirming the trial court's decision through reliance on *Larkins*.

{¶55} Any reliance on *Larkins* to fuse the due process standards with a Crim.R. 16 discovery violation analysis is especially misplaced in light of *Darmond*.[7] *Larkins* was

---

[7]I acknowledge the Ohio Supreme Court's decision in *Darmond*, 135 Ohio St.3d 343, 351, 2013-Ohio-966, 986 N.E.2d 971, occurred subsequent to the trial court's proceedings in the current case. Our references to *Darmond* are intended for the sake of convenience. *Darmond* merely reiterated the standard advanced in *Lakewood*, 32 Ohio St.3d 1, 4-5, 511 N.E.2d 1138, which was the same standard the trial court applied in dismissing the indictment. Further, this district held that

decided under the presumption that the discovery sanction inquiry ended without any specific analysis regarding the effectiveness of less severe discovery sanctions, specifically, but not exclusively, whether the sanction of exclusion of the unavailable witnesses' testimony the trial court already imposed would have sufficed to remedy the prejudice caused by the discovery violation. *See Larkins*, 8th Dist. Cuyahoga No. 85877, 2006-Ohio-90, _ 51 (in *Larkins*, this court did not consider the effectiveness of precluding the use of the unavailable witnesses' prior testimony at the retrial). The *Larkins* court merely relied on Larkins's establishment of prejudice, with no analysis regarding the effectiveness of the least severe sanction. *Id.* at _ 51.

{¶56} Similar to the *Larkins* court's approach, the concept of due process does not require the court to determine the effectiveness of a less severe sanction before dismissing an indictment on due process grounds either. *See, e.g., State v. Cline*, 8th Dist. Cuyahoga No. 64776, 1994 Ohio App. LEXIS 683, *5-6 (Feb. 24, 1994) (defendant need only show actual prejudice before the burden shifts to the state to establish a justifiable basis for the delay in indicting the defendant). Thus, according to the *Larkins* court, the due process and Crim.R. 16 discovery sanction arguments were coextensive: both required the defendant to establish prejudice as the culminating inquiry. The fact that the *Larkins*

---

*Lakewood* applied equally to discovery violations by the state and the defendant prior to the Ohio Supreme Court's final pronouncement on the issue. *See State v. Wolf*, 8th Dist. Cuyahoga No. 83632, 2004-Ohio-5023, _ 17 (applying the least severe sanction rationale to the standard of review to determine whether the trial court abused its discretion in not excluding a state's witness despite the failure to disclose in favor of a less severe sanction, given the scope of the discovery violation and the lack of prejudice to the defendant); *State v. Brown*, 8th Dist. Cuyahoga No. 83976, 2004-Ohio-5863, ¶ 6 (applying *Lakewood* analysis to the state's discovery violations).

court combined the two separate arguments was harmless, given that overlap and the fact that Larkins presented specific evidence supporting the due process arguments. *Larkins* must be limited to the facts and circumstances of that case in light of the fact that discovery sanctions predicated upon Crim.R. 16 must undergo the effectiveness of a less severe sanction analysis. The majority's reliance on *Larkins* is, therefore, misplaced.

{¶57} Further, *Larkins* does not stand for the proposition that the degradation of a witness's memory is presumed from the passage of time, as Keenan argued and the trial court considered. The *Larkins* court found the unavailability of 24 witnesses prejudiced the defendant's ability to defend the case "wholly apart from issues relating to the typical degradation of memories occurring over long periods of time." *Larkins*, 8th Dist. Cuyahoga No. 85877, 2006-Ohio-90. Thus, the *Larkins* court did not address the degradation of the witnesses' memories because the unavailability of so many witnesses precluded the defendant from presenting a meaningful defense in the first place.

{¶58} In this case, it is not enough to presume the degradation of a witness's memory prejudices Keenan for the purposes of whether any retrial would violate Keenan's right to due process under Article I, Section 16, of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. In fact, Keenan acknowledged the lack of specific evidentiary material to substantiate the degradation of memory issue and instead relied on the notion of "common sense" to determine that the witnesses would not have sufficient memory to testify at the retrial. Tr. 395:13-20. Such a presumption would automatically entitle a defendant to a finding of prejudice that

warrants a dismissal of the indictment in all cases where a retrial is granted based on any type of *Brady* violation made years after the original trial. It must be reiterated that, to the contrary, most courts have established that the typical remedy for a *Brady* violation is the granting of a new trial. *Mapp*, 3d Dist. Union No. 14-10-34, 2011-Ohio-4468, _ 32; *Presser*, 844 F.2d 1275, 1286 (6th Cir.1988).

{¶59} This court has maintained in the similar context of pre-indictment delay, the mere "possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost[,] * * * are not in themselves enough to demonstrate that [a defendant] cannot receive a fair trial * * *." *State v. Cline*, 8th Dist. Cuyahoga No. 64776, 1994 Ohio App. LEXIS 683, *5-6 (Feb. 24, 1994), citing *State v. Starks*, 8th Dist. Cuyahoga No. 50087, 1986 Ohio App. LEXIS 5845 (Mar. 6, 1986). It is incumbent upon the defendant to establish that the witnesses currently have such a diminished ability to recollect the events as to prejudice the defendant in a retrial. *State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, _ 25. I see no reason to create a presumption and deviate from our pre-indictment delay standard for the purposes of determining whether the retrial, premised on the *Brady* violation after the parties pursued discovery, is violative of the defendant's constitutional right to due process. Accordingly, the trial court's conclusion that the available witnesses were unable to effectively testify at the retrial is not supported by the evidence. There is no evidence in the record establishing the prejudice created by the passage of time. Quite the opposite. The state presented evidence that witnesses were ready and able to testify at the retrial.

**{¶60}** Of the five witnesses who are unavailable to testify at Keenan's retrial, any potential prejudice caused by Espinoza's and Crimi's unavailability was seemingly resolved by the trial court's preclusion of Espinoza's previous testimony and the state's stipulation as to the content of Crimi's alleged exculpatory statements. Neither the trial court nor Keenan offered any rationale explaining the ineffectiveness of those remedial steps for the purposes of the aggravated murder counts other than the bootstrapping claim that the exclusion then prejudices Keenan. The trial court completely failed to consider any prejudice with regard to the individual counts for kidnapping and aggravated burglary as required when considering whether to impose sanction pursuant to Crim.R. 16. The trial court thus abused its discretion in dismissing the indictment without undergoing the correct analysis prior to imposing the most severe discovery sanction available.

**{¶61}** It is unfortunate that Keenan may be placed in the position of potentially having to endure a third trial for acts that occurred over two decades ago, but the victim deserves a just process, as does Keenan. Accordingly, I would find the trial court abused its discretion in dismissing the entire indictment as a discovery sanction pursuant to Crim.R. 16 without first addressing the effectiveness of a less severe discovery sanction to address the *Brady* violations. If the dismissal was predicated upon due process grounds, it cannot be determined that the retrial violates Keenan's right to due process based on the record submitted on appeal. In light of the foregoing, I would reverse the decision of the trial court and remand for further proceedings.