JOURNAL ENTRY and OPINION
{¶ 1} The state of Ohio appeals from the dismissal of a 1986 felony murder indictment against defendant Ronald Larkins. The court dismissed the indictment on grounds that the state's refusal to hand over exculpatory evidence, coupled with the prejudice caused by the passage of time, meant that Larkins could not obtain a fair retrial. This appeal raises important questions as to the scope and basis of sanctions levied against the state for refusing to divulge exculpatory evidence. We agree that the prejudice caused by the state's refusal to divulge exculpatory evidence has now made it impossible to restore Larkins to the position that he should have been in at the time of the first trial had he been made aware of the exculpatory evidence, and therefore find that the court did not abuse its discretion by dismissing the indictment.
 I {¶ 2} In 1986, three armed bandits held up a pawn shop and killed one of the owners and injured the other. The police quickly learned the names of two of the three assailants: Wendell Johnson and Monika Henderson. Both of them turned themselves in and identified the third person as "Road Dog." The state indicted Road Dog in Case No. 166827 for aggravated murder and listed his name on the indictment as "Road Dog," it not knowing his real name at the time it sought the indictment.
 {¶ 3} "Road Dog" was later identified as Larkins. Larkins fled Ohio for Colorado immediately after the murder and, while in Colorado, he committed a robbery and was being held there for trial. Ohio requested extradition, but Larkins fought it on grounds that he had been misidentified as "Road Dog." While Ohio continued to press for extradition, Colorado extradited Larkins to Michigan to stand trial for an armed bank robbery that he committed just prior to the murder in Ohio. In any event, Larkins was found guilty in the Colorado courts and imprisoned until 1986.
 {¶ 4} Upon his parol from the Colorado prison, the state returned Larkins to this jurisdiction to stand trial. The state reindicted Larkins under a new case number, Case No. 212083, this time listing his full name. The court merged this case with Case No. 166827 without objection from Larkins. A jury found Larkins guilty of aggravated murder, attempted murder and aggravated robbery. He received a life sentence. This court affirmed the conviction in State v. Larkins, Cuyahoga App. Nos. 52779 and 52780.
 {¶ 5} Larkin thereafter filed various postconviction motions. One of them being a request for the Cleveland Police Department to turn over all records, including investigative records, related to the murder case. That request found its way to the Ohio Supreme Court in State ex rel. Steckman v. Jackson (1994),70 Ohio St.3d 420, in which the supreme court held that "[i]nformation, not subject to discovery pursuant to Crim.R. 16(B), contained in the file of a prosecutor who is prosecuting a criminal matter, is not subject to release as a public record pursuant to R.C. 149.43 and is specifically exempt from release as a trial preparation record in accordance with R.C. 149.43(A)(4)." The supreme court also held that "once a record becomes exempt from release as a `trial preparation record,' that record does not lose its exempt status unless and until all `trials,' `actions' and/or `proceedings' have been fully completed." Id. at paragraph three of the syllabus. Finally, the supreme court held that "a defendant in a criminal case who has exhausted the direct appeals of her or his conviction may not avail herself or himself of R.C. 149.43 to support a petition for postconviction relief." Id. at paragraph six of the syllabus.
 {¶ 6} In short, the supreme court held that Larkins was not entitled to any of the police records that he requested. This case would have ended there, except that a person from Cincinnati named Bishop Alfred Nickles filed a public records request for documents held by the police relating to Larkins' case. For unknown reasons, the police turned over the records and Nickles forwarded them to Larkins. Those records contained the following information: 1) the description of the robbers given by eyewitnesses did not match Larkins; 2) a description of "Road Dog," the second shooter, given by potential suspect Todd Hicks did not match Larkins; 3) the police relied on a confidential informant; 4) a witness, Sonja Belcher, who was present when the robbery was planned, did not identify Larkins as one of the planners, and said she saw both robbers after it was known Larkins left town; 5) Henderson named Larkins only after the police told her that Larkins was known by the nickname, "Road Dog;" and 6) Henderson lied on the stand concerning her past criminal convictions. Moreover, Larkins learned that Henderson lied when asked whether the state had promised her anything in exchange for her testimony. Although Henderson asserted at trial that she was testifying without any promises from the state, the assistant prosecuting attorney trying the case wrote a letter on her behalf to the parole board, indicating that he promised her that he "would do everything possible to help her get off parole" because she was initially reluctant to return to Ohio to testify at trial.
 {¶ 7} Larkins filed a motion for a new trial on grounds that the state withheld exculpatory evidence from him during discovery. The state opposed the motion on its merits, but also by complaining that the supreme court had ruled that the documents requested were undiscoverable under Steckman and therefore could not be used to support a postconviction motion. The trial court rejected the state's arguments and granted the motion for a new trial. On appeal, this court held in State v.Larkins, Cuyahoga App. No. 82325, 2003-Ohio-5928, that Larkins lawfully obtained the police records, so the trial court properly allowed Larkins to rely on information contained in the police records which constituted exculpatory evidence. We held that the trial court did not abuse its discretion in granting a new trial because, given that there was no physical evidence from the crime scene that specifically linked Larkins to the murder and robbery, the cumulative effect of the withheld evidence was sufficiently material to justify a new trial as it not only questioned the credibility of the state's main witnesses, but it also questioned the identity of the perpetrator of the crime.
 {¶ 8} When the case went back to the trial court for a new trial, Larkins filed a motion to dismiss the indictment as a sanction for discovery violations and on grounds of preindictment delay. The discovery aspect of the motion argued that several witnesses who might have cast doubt on the state's theory of guilt but were undisclosed, were now deceased or unavailable. As for the pre-indictment delay aspect of the motion, Larkins argued that the state did not amend the indictment against him to list his correct name until 1986, therefore a period of five years elapsed from the date of the crime until he had been formally charged by name.
 {¶ 9} The court made the following findings:
 {¶ 10} "The Court finds that there was a pre-indictment delay of some five (5) years during that time at least two (2) key witnesses died. No explanation has been offered for this delay. While defendant did fight extradition for two years (1984-1986) it would appear from the documents appended to the State's pleadings, that the basis of his contention was that he was not the "Road Dog" named in the Ohio indictment. That has been defendant's position throughout this matter and an attempt to vindicate that position is, in fact, at the heart of these entire proceedings.
 {¶ 11} "Finally, and perhaps most importantly to this Court, the defendant has been trying at least since 1994 to obtain the exculpatory evidence in possession of the State. * * *
 {¶ 12} "The issue hence becomes: when the State purposely secrets exculpatory evidence from a defendant resulting in a `verdict unworthy of confidence' and then actively seeks to conceal that evidence for a period of years, and as a result numerous witnesses are deceased or unable-to-be-located, is dismissal the appropriate remedy? * * *
 {¶ 13} "It is clear that the passage of time has gravely prejudiced the defendant. Whether this is denominated as a Speedy Trial Violation, a Due Process Violation, a Brady Violation, or a double jeopardy issue, the fact clearly remains that the defendant cannot now in 2004-2005, receive the fair trial to which he is entitled."
 III. Preindictment Delay {¶ 14} The state first argues that the court erred by finding that a preindictment delay supported dismissal of the indictment.
 {¶ 15} The concept of preindictment delay is grounded not in the Sixth Amendment right to a speedy trial, but in the Fifth Amendment right to due process of the law. In United States v.Stierwalt (C.A.8, 1994), 16 F.3d 282, 284, 285, the Eighth Circuit Court of Appeals stated:
 {¶ 16} "The Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an `accused' * * *. United States v. Marion, 404 U.S. 307, 313,30 L. Ed. 2d 468, 92 S. Ct. 455 (1971). The chief purpose of the Sixth Amendment speedy trial guarantee is not to protect the defendant from prejudice to his defense as a result of delay.United States v. MacDonald, 456 U.S. 1, 8, 71 L. Ed. 2d 696,102 S. Ct. 1497 (1982). Instead, Sixth Amendment protection `is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.' Id.
 {¶ 17} "* * *
 {¶ 18} "[the] right to a prompt indictment is protected by the appropriate statute of limitations and by the Due Process Clause of the Fifth Amendment. See Marion, 404 U.S. at 322,324; cf. MacDonald, 456 U.S. at 7 (`Any undue delay after charges are dismissed, like any delay before charges are filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause.)." (Internal quotations omitted.)
 {¶ 19} To prevail on a motion to dismiss an indictment on grounds of preindictment delay, the supreme court held that a defendant must:
 {¶ 20} "* * * present evidence establishing substantial prejudice. Once the defendant fulfills that burden, the state has the burden of producing evidence of a justifiable reason for the delay. State v. Whiting (1998), 84 Ohio St.3d 215, 217,1998-Ohio-575, 702 N.E.2d 1199. Thus, `the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.' United States v. Lovasco (1977), 431 U.S. 783,790, 97 S. Ct. 2044, 52 L. Ed. 2d 752." See State v. Walls,96 Ohio St.3d 437, 2002-Ohio-5059.
 {¶ 21} Larkins has not established substantial prejudice from the alleged preindictment delay. Tellingly, he failed to lodge any objection on preindictment delay grounds at the time the state merged case numbers 166827 and 212083. It is a fundamental tenent of appellate procedure that a party complaining of error has the obligation to raise that error at a time at which it may be corrected without further prejudice to that party. See Statev. 1981 Dodge Ram Van (1988), 36 Ohio St.3d 168, 170. Larkins did not raise the issue of preindictment delay at trial, nor did he raise the issue on direct appeal. See State v. Larkins (Oct. 8, 1987), Cuyahoga App. Nos. 52779 and 52780. On this basis alone, we reject the court's findings on preindictment delay.
 {¶ 22} Nevertheless, even were we to consider the merits of this argument, we would find that Larkins brought the delay upon himself. He fled Ohio following the murder, and went to Colorado where he assumed the alias "Seth Yellen." While in Colorado, he became the subject of an indictment for aggravated robbery in the Denver District Court. He also faced charges arising in Arapahoe County, Colorado. Larkins' attorney asked the Denver court to delay proceeding on those charges pending the outcome of the Arapahoe County case — counsel advised the court that if the Arapahoe County court found Larkins guilty, then Larkins would enter a plea in the Denver case. The Arapahoe County court found Larkins guilty in January 1982, but Larkins did not immediately enter a guilty plea in the Denver case because he represented to the court that Arapahoe county was preparing a probation report which would inform the Denver court of his sentencing. The Denver court continued the case until April 1982.
 {¶ 23} Larkins did not appear for the April 1982 Denver court date, nor did he appear in Arapahoe County for probation interviews. Instead, he fled to the state of Mississippi, where he was arrested in May 1982. He objected to extradition to Colorado, and did not return to that state until August 1982. Proceedings in the Denver court were delayed until sentencing in Arapahoe County. Larkins received eight years for the Arapahoe County offenses, but then filed a writ of habeas corpus, complaining about his extradition from Mississippi to Colorado. He told the Denver court that he would not be entering his promised guilty plea to that court since it would potentially moot the habeas proceedings. Larkins then spent several years fighting extradition back to Colorado. See Yellen v. Cooper
(Colo. 1986), 713 P.2d 925; People v. Yellen (Colo. 1985),704 P.2d 306, certiorari denied, 474 U.S. 1036, 106 S.Ct. 603,88 L.Ed.2d 582 (1985); Yellen v. Nelson (Colo. 1984),680 P.2d 234.
 {¶ 24} While the Colorado legal proceedings were going on, the state of Ohio filed a detainer in both Mississippi and Colorado in June 1982. In May 1983, Colorado delivered Larkins to the state of Michigan to answer to criminal charges. Ohio again issued a detainer, but it was delayed by the Michigan proceedings. Larkins returned to Colorado in December 1983. In March 1984, Ohio filed a third detainer. Larkins responded by seeking a writ of habeas corpus which delayed extradition until 1986, at which time the Colorado Supreme Court denied the writ and order. See Yellen v. Cooper. The Cuyahoga County Grand Jury then returned the second indictment in Case No. 212083.
 {¶ 25} The above facts demonstrate that Larkins caused any preindictment delay by fleeing Colorado, being tried in the state of Michigan, and strenuously fighting all attempts to extradite him. These events took years to unfold. All the while, Ohio had detainers placed on Larkins, so it cannot be said that it failed to prosecute the matter to the best of its ability under the circumstances. We find no justification for the court's decision to dismiss the indictment on grounds of preindictment delay.
 III {¶ 26} The more substantial basis for dismissal is the due process question related to the state's failure to hand over to Larkins exculpatory evidence. The court considered this issue in the context of Larkins' ability to receive a fair trial when so many of those persons who might have assisted the defense are either dead or unavailable. In doing so, it relied uponCommonwealth v. Smith (Pa. 1992), 532 Pa. 177, 615 A.2d 321, for the proposition that, regardless of double jeopardy limitations, state constitutions can be interpreted to afford more expansive due process protections, leading up to dismissal, for particularly egregious prosecutorial misconduct.
 {¶ 27} As the previously quoted portion of the court's opinion shows, there is some question as to the actual basis for the dismissal. This being the case, we are reluctant to address the constitutional bases cited by the court when the case can be decided on statutory grounds. See Kinsey v. Bd. of Trustees ofPolice Firemen's Disability Pension Fund of Ohio (1990),49 Ohio St.3d 224, 225. In particular, we find there is sufficient evidence in the record to show that the court dismissed the indictment as a sanction for a discovery violation. Indeed, inState v. Larkins, No. 82325, 2003-Ohio-5928, we cited extensively to Brady v. Maryland (1963), 373 U.S. 83, in finding that the "cumulative effect of the withheld evidence is sufficiently material to justify a new trial." Id. at ¶ 39. Although our opinion addressed the cumulative effect of the withheld exculpatory evidence, it did not address the sanction, if any, to be applied against the state for that violation.
 A. The Law of the Case {¶ 28} Before addressing the discovery violation, we must deal with the suggestion that Larkins was prevented from filing a motion to dismiss under the "law of the case" doctrine. The state argues that our remand for a new trial in Case No. 82325 established, to the exclusion of all else, the procedure for the court to follow. By dismissing the indictment, the state argues that the court exceeded the narrow mandate of this court's order to conduct a new trial.
 {¶ 29} The United States Supreme Court has stated that "law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California
(1983), 460 U.S. 605, 618, citing 1B J. Moore T. Currier (1982), Moore's Federal Practice, ¶ 0.404. The Ohio Supreme Court has interpreted the law of the case doctrine to provide that the "decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels."Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3.
 {¶ 30} The "law" in the law of the case doctrine is controlling here. The doctrine applies to the law as interpreted by a higher court, precluding relitigation of legal issues that have been decided with finality. It is, in essence, a mandate for the lower courts to apply the law as interpreted by higher courts. State ex rel. Shariff v. McDonnell, 91 Ohio St.3d 46,47-48, 2001-Ohio-240; Nolan, 11 Ohio St.3d at 32. The law of the case doctrine is discretionary in application, subject to three exceptions: (1) The evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice. UnitedStates v. Becerra (C.A.5, 1998), 155 F.3d 740, 752-53.
 {¶ 31} The law of the case doctrine should not be confused with what is called the "mandate rule." The mandate rule "provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." Id. at 753 (internal alterations and quotation marks omitted). See, also,United States v. Quintieri (C.A.2, 2002), 306 F.3d 1217, 1228.
 {¶ 32} The "law" we established in our prior decision was that the court did not err by granting a new trial. Civ.R. 33(D) and R.C. 2945.82 govern the manner in which a new trial is to be conducted. Civ.R. 33(D) states that "[w]hen a new trial is awarded on appeal, the accused shall stand trial upon the charge or charges of which he was convicted." R.C. 2945.83 states, "[w]hen a new trial is granted by the trial court * * * the accused shall stand for trial upon the indictment or information as though there had been no previous trial thereof."
 {¶ 33} Once the court ordered the new trial, matters stood in the same position they did before any trial had been conducted. It follows that the court possessed all authority to reopen discovery or entertain any pretrial motions available at law.
 {¶ 34} Even if there were no rules or statutes to provide guidance in these circumstances, we believe it manifest that the court, upon remand for a new trial, possesses the authority to regulate proceedings as necessary. In this case, nearly 25 years have elapsed since the first trial. No doubt, new counsel would be engaged for both Larkins and the state. During the course of interviewing the new witnesses, it is likely that additional information relevant to the case would be revealed, thus necessitating additional discovery. It would be wholly unfeasible (apart from being contrary to law) to suggest that the court's only course of action was to immediately convene a jury and commence trial.
 B. Discovery Violation Sanction {¶ 35} Crim.R. 16(B)(1)(f) states that, "[u]pon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment."
 {¶ 36} If the state violates Crim.R. 16(B)(1)(f), Crim.R. 16(E)(3) permits the court to "make such order as it deems just under the circumstances." Crim.R. 16(E)(3) is tempered, however, by the court's obligation to "impose the least severe sanction that is consistent with the purpose of the rules of discovery."Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, paragraph two of the syllabus. Nevertheless, the extraordinary circumstances of a case could well justify dismissal of an indictment as a sanction for a discovery violation. See State v. Harris (1998),127 Ohio App.3d 626, 630-631; Virgin Islands v. Fahie (C.A.3, 2005),419 F.3d 249, 255 (citing similar federal rule). Indeed, one court has rather persuasively argued that Lakewood v. Papadelis is not directly applicable to cases involving discovery violations by the state. In State v. Crespo, Mahoning App. No. 03 MA 11,2004-Ohio-1576, ¶ 91-1, the Seventh District stated:
 {¶ 37} "Moreover, the holding in Lakewood must be read in conjunction with its facts. In Lakewood, the defense failed to respond to the prosecution's demand for discovery. During trial, the state objected when the defense called its first witness on the ground that the state had not been provided a witness list. The trial court then excluded the testimony of all defense witnesses as a sanction for the failure of the defense to comply with the state's discovery demand.
 {¶ 38} "In that context, the court in Lakewood discussed a balancing test between a defendant's constitutional rights and the state's interest in pre-trial discovery, and concluded that `the foregoing balancing test should not be construed to mean that the exclusion of testimony or evidence is never a permissible sanction in a criminal case. It is only when exclusion acts to completely deny defendant his or her constitutional right to present a defense that the sanction is impermissible.'
 {¶ 39} "It is difficult to extend that same rationale in a case where the sanction is imposed on the prosecution. For example, it would be rare that a ruling imposing a sanction against the state would deny a defendant of `his or her constitutional right to present a defense' when it more logically would improve the ability to present a defense. Therefore, the holding in Lakewood is not directly applicable in cases where sanctions are imposed upon the prosecution. To the extent that Lakewood stands for the proposition that a trial court should weigh the interests and rights of an accused with the interests of the state prior to considering a sanction against the state, it is applicable. The trial court should then apply the least severe sanction appropriate to the circumstances of the case, the severity of the offending conduct, and the impact of the offending conduct upon the ability of an accused to present a defense."
 {¶ 40} The state argues that under Lakewood v. Papadelis
there is always a less drastic sanction than dismissal, and that the court should have applied it here. There is a logical inconsistency in this argument; namely, that dismissal of criminal charges could never occur as there is always a less drastic sanction than dismissal of criminal charges. In short, were Lakewood v. Papadelis applied by rote as suggested by the state, dismissal of criminal charges would never occur as a result of the state's discovery violations. This logic would nullify the court's discretion to craft a sanction tailored to the specific facts of an individual case.
 {¶ 41} Having found that dismissal of the indictment is available as a sanction for discovery violations under Crim.R. 16(E)(3), it remains for us to examine the remedy imposed on the state — dismissal of the indictment.
 {¶ 42} In State v. Wiles (1991), 59 Ohio St.3d 71, 78-79,571 N.E.2d 97, the supreme court stated that a trial court has discretion under Crim.R. 16(E)(3) to determine the appropriate response for failure of a party to disclose material subject to a valid discovery request. To determine whether a trial court has abused its discretion in dealing with Crim.R. 16 violations, we look to whether: (1) the violation was willful; (2) foreknowledge would have benefitted the defendant; and (3) the defendant suffered prejudice as a result of the state's failure to disclose the information. State v. Parson (1983), 6 Ohio St.3d 442, 445.
 {¶ 43} In light of this court's opinion in Case No. 82325, it is a given that the state willfully withheld exculpatory evidence from Larkins. Indeed, the state actively fought disclosure of the evidence after-the-fact by refusing Larkins' public records request. While that refusal was ultimately found to be justified by the supreme court in Steckman under the public records laws, it could be argued that the state's strenuous opposition to disclosing the records was meant to cover up its failure to divulge that evidence prior to trial.
 {¶ 44} Likewise, our prior opinion explicitly acknowledged that foreknowledge of the withheld evidence would have benefitted Larkins:
 {¶ 45} "The June 19, 1981 police report and July 17, 1981 statement of Todd Hicks reveal that Hicks gave a description of `Road Dog' as: `five foot, seven inches tall, weighs 175 pounds, has brown skin, and wears his hair in a permanent, straight back.'
This was the first description given to the police of `Road Dog,' but it was not provided to defense counsel prior to trial. Because Larkins is a six-foot, one-inch tall, light-skinned black male who appears Hispanic, Hicks' description contradicts the State's identification of Larkins as `Road Dog.'
 {¶ 46} "Additionally, Hicks' statement alleged that Johnson, Henderson, and `Road Dog' were at Hicks' house the night of May 28. However, at trial, Mary Carter testified that she and Larkins left Cleveland the day of the robbery. Hicks never mentioned seeing Mary Carter. If Carter is to be believed, Larkins was not the person at Hicks' house because he was on his way to Denver with Carter. At a minimum, this evidence could have been used to impeach Carter on the stand.
 {¶ 47} "Although the State provided Larkins' defense counsel Hicks' name as a potential witness, the State never disclosed the exculpatory information contained in Hicks' statement. Similarly, the State never informed Larkins' defense counsel of the nature of Sonja Belcher's statement which contradicted Carter's statement, implicated Hicks as being `Road Dog,' and provided a possible alibi for Larkins. This information clearly undermines the confidence of the verdict.
 {¶ 48} "Likewise, the State failed to reveal that all the eyewitness descriptions obtained from people present at the pawnshop differed from Larkin's appearance and even Henderson's description. Two of the eyewitness statements indicated that the perpetrators were clean-shaven and dark-skinned and never mentioned that either perpetrator wore a nylon stocking on his head. Contrary to these statements, Henderson stated that Larkins wore a nylon stocking and was light-skinned with a heavy mustache. Moreover, twelve of the eyewitnesses interviewed did not identify Larkins' photo as one of the perpetrators.
 {¶ 49} "In addition, the record reveals that Henderson lied when asked if the prosecution had promised her anything in exchange for her testimony. Whereas the prosecution clearly had promised to write to the parole board on her behalf in exchange for her testimony, Henderson failed to reveal this when questioned. Furthermore, Henderson lied regarding her past criminal convictions. The police records indicated that she had prior convictions, so the prosecution should have been aware that her statement was false. We find there is a reasonable likelihood that Henderson's perjured testimony affected the judgment of the trial court and, therefore, Larkins is entitled to a new trial.
 {¶ 50} "Given that there was no physical evidence from the crime scene that specifically linked Larkins to the murder and robbery, this court is reluctant to hold that the exculpatory evidence withheld from the defense would not have changed the outcome of the trial to a reasonable probability. Rather, the cumulative effect of the withheld evidence is sufficiently material to justify a new trial. The exculpatory evidence withheld not only questions the credibility of Henderson and Carter — the State's main witnesses — but it also questions the identity of `Road Dog.' Accordingly, we find the trial court did not abuse its discretion in granting Larkins' motion for a new trial." State v. Larkins, Cuyahoga App. No. 82625, at ¶ 34-39 (internal citations omitted).
 {¶ 51} Finally, we agree that Larkins has suffered prejudice from the state's discovery violation, and that this is the extraordinary case where the prejudice cannot be cured by a new trial. Almost 20 years have elapsed since the 1986 trial. The court noted that eight witnesses for the defense were deceased, six witnesses for the defense had unknown addresses, and 10 witnesses for the state were without addresses. Larkins' inability to present these witnesses speaks for itself, wholly apart from issues relating to the typical degradation of memories occurring over long periods of time. Ordinarily, those witnesses who previously testified but are now unavailable could have their prior testimony presented under Evid.R. 804(B)(1). But to do so in a retrial of this case would be useless as none of the witnesses who gave the prior testimony could be questioned about the exculpatory evidence withheld in the case. In short, to conduct a new trial at this stage would be meaningless as Larkins' ability to use the exculpatory evidence would be negligible, at best, thus making the retrial itself futile.
 {¶ 52} We therefore find that the court did not abuse its discretion by dismissing the indictment as a sanction for the state's failure to divulge exculpatory evidence under Crim.R. 16(B)(1)(f). In arriving at this conclusion, nothing we have said here should be construed as a comment on the outcome of the first trial. The dismissal of an indictment as a sanction for a discovery violation is not the same thing as the reversal of a conviction for want of sufficient evidence. This fact is demonstrated by our affirmance in State v. Larkins, Cuyahoga App. No. 52779 and 52780.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J., Concurs with Separate Opinion.
 Dyke, A.J., Dissents with Separate Opinion.
 CONCURRING OPINION